UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| GAIL A., <br><br> Plaintiff, <br><br> v. <br><br> KILOLO KIJAKAZI, <br> Acting Commissioner of Social Security, <br><br> Defendant. | No. 22 CV 7248 <br><br> Judge Manish S. Shah |

### MEMORANDUM OPINION AND ORDER

Plaintiff Gail A.[1] appeals from the Social Security Commissioner's decision denying her Supplemental Security Income. For the reasons explained below, the Commissioner's decision is reversed and the matter is remanded back to the agency for proceedings consistent with this decision.

**I.    Legal Standard**

Because the Social Security Appeals Council declined review, the administrative law judge's decision is final and subject to judicial review.[2] *See* 20 C.F.R. § 404.984(a). Judicial review of social security decisions is limited—I ask only whether the ALJ applied the law correctly and supported her decision with

---

[1] I refer to plaintiff by her first name and the first initial of her last name to comply with Internal Operating Procedure 22.

[2] Only a "final decision" made by the Social Security Commissioner is subject to judicial review. 42 U.S.C. § 405(g). A ruling by the Appeals Council, as is the case here, is considered a final decision. 20 C.F.R. § 416.1481; *see also* 42 U.S.C. § 405(a) (the Commissioner has broad authority to create rules and regulations to enact social security laws).

substantial evidence. *See Gedatus v. Saul*, 994 F.3d 893, 900 (7th Cir. 2021). Substantial evidence is not a high bar; it means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quoting *Consolidated Edison Co. of New York v. NLRB.*, 305 U.S. 197, 229 (1938)). I analyze whether the ALJ built an "accurate and logical bridge" between the evidence and the conclusion, *Jarnutowski v. Kijakazi*, 48 F.4th 769, 774 (7th Cir. 2022), and whether the ALJ's analysis had "enough detail and clarity to permit meaningful appellate review." *Scrogham v. Colvin*, 765 F.3d 685, 695 (7th Cir. 2014). An ALJ's credibility findings are given special deference and will only be overturned if "patently wrong." *Hohman v. Kijakazi*, 72 F.4th 248, 251 (7th Cir. 2023). I can affirm, modify, or reverse the Commissioner's decision, with or without remanding the case for a rehearing. 42 U.S.C. § 405(g).

**II.    Facts**

Gail A. was diagnosed with chronic low back pain with sciatica, osteoarthritis of the lumbosacral spine with myelopathy, lumbar disc herniation with radiculopathy, chronic obstructive pulmonary disease, chronic anxiety, and depression. [11-1] at 233, 240–41, 255, 296–300, 310.[3] She applied for Supplemental Security Income, and the Social Security Administration denied her claim. *Id.* at 72–76. Plaintiff requested a reconsideration, which the SSA denied.[4] *Id.* at 91–92. She

---

[3] Bracketed numbers refer to entries on the district court docket. Referenced page numbers are from the CM/ECF header placed at the top of documents.

[4] The reconsideration notice stated that Gail A. did not attend a schedule consultative exam and that the determination was made based on the evidence on file. [11-1] at 68–69.

2

further appealed the denial to an administrative law judge. *Id.* at 93–95. At the hearing, plaintiff and a vocational expert testified. *Id.* at 34–55. The ALJ denied the claim. *Id.* at 16–30. The ALJ determined that Gail A. was capable of medium work with some limitations and was therefore not disabled. *Id.*

To determine whether Gail A. was disabled, the ALJ applied the agency's five-step test. [11-1] at 20–21. The five steps ask: 1) whether the claimant is currently employed, 2) whether the claimant's impairment is severe, 3) whether the impairment is one that the Commissioner considers conclusively disabling, 4) if the impairment is not one that the Commissioner considers conclusively disabling, whether the claimant's residual functional capacity allows her to perform her past work, and 5) if her RFC is too limited for her to perform her past work, whether there are other jobs in the national economy that she is capable of performing. 20 C.F.R. § 404.1520(a)(4). If the agency cannot determine disability at a step, it goes on to the next step. *Id.* The claimant has the burden of proving disability at steps one through four; the burden of proof shifts to the Commissioner at step five. *See Schmidt v. Astrue*, 496 F.3d 833, 841 (7th Cir. 2007).

At step one, the ALJ found that plaintiff was not gainfully employed. [11-1] at 21. At step two, the ALJ found that plaintiff had three severe impairments: degenerative disc disease of the lumbar spine, depression, and anxiety. *Id.* at 22. The ALJ found plaintiff's following impairments to be non-severe: bilateral cataracts, obesity, stress-induced urinary continence, hypertension, dyslipidemia, vitamin D

3

deficiency, and lung nodules.[5] *Id.* The ALJ determined plaintiff's obesity to be non-severe because there was no evidence of functional limitations caused by plaintiff's obesity, alone or in combination with her other impairments.[6] *Id.* The ALJ noted that her cardiovascular and respiratory assessments had been "generally benign." *Id.*

At step three, the ALJ found that plaintiff's impairments did not meet or medically equal impairments that the SSA considers conclusively disabling. [11-1] at 22–24. To be conclusively disabling, a claimant's impairments must meet the criteria found in the Listing of Impairments. 20 C.F.R. §§ 404.1520(d); 404.1525(a); Pt. 404, Subpt. P, App. 1. The ALJ evaluated plaintiff's lumbar degenerative disc disease under listing 1.16 for musculoskeletal impairments and found that it did not satisfy the four criteria because there was no evidence of neurological compromise, nonradicular neurological signs during examination, or imaging consistent with compromise of the cauda equina with lumbar spinal stenosis. [11-1] at 23. Additionally, the ALJ did not find evidence of physical limitations lasting or expected to last for at least 12 months that required an assistive device to ambulate. *Id.* While

---

[5] The ALJ found that her bilateral cataracts were a non-severe impairment because she had undergone surgery and was doing well after the surgery. [11-1] at 22. The ALJ noted that while hypertension can result in end-organ damage, plaintiff's treatment notes showed that it was being well controlled. *Id.* The ALJ found plaintiff's complaints of stress-induced urinary continence were inconsistent with some treatment notes that showed plaintiff denied incontinence. *Id.* The ALJ noted that while dyslipidemia was recorded, there was no evidence of impaired or clogged arteries, heart attacks, stroke, or other circulatory concerns. *Id.* The ALJ found that plaintiff's vitamin D deficiency was being addressed through over-the-counter supplements and did not require additional treatments. *Id.*

[6] A claimant's obesity can be severe if it "alone or in combination with another impairment(s), significantly limits his or her physical or mental ability to do basic work activities" but "the impairment(s) is 'not severe' if it does not significantly limit [a person's] physical or mental ability to do basic work activities." SSR 19-2p, 84 Fed. Reg. 22924, 22925 (May 20, 2019).

4

plaintiff's lumbar disc herniation showed some radiculopathy, an assessment of plaintiff's back showed symmetry, no curvature, normal range of motion, and no tenderness. *Id.* Other examinations noted that plaintiff exhibited normal gait and station with normal muscle strength. *Id.*

The ALJ next evaluated plaintiff's mental impairments under listings 12.04 (depressive, bipolar and related disorders) and 12.06 (anxiety and obsessive-compulsive disorders). [11-1] at 23–24. The ALJ assessed plaintiff's impairments under paragraph B criteria, which assesses how a mental disorder limits areas of mental functioning that a person uses in a work setting.[7] 20 C.F.R. § Pt. 404, Subpt. P, App. 1. The four areas of mental functioning include: (1) understand, remember, or apply information; (2) interact with others; (3) concentrate, persist, or maintain pace; and (4) adapt or manage oneself. *Id.* The ALJ determined that plaintiff's depression and anxiety did not result in one extreme limitation or two marked limitations. [11-1] at 24. The ALJ determined that plaintiff had mild limitations in the areas of interacting with others and adapting or managing oneself.[8] *Id.* But she determined that plaintiff had moderate limitations in the other two areas. Plaintiff's

---

[7] To satisfy paragraph B criteria, a claimant's mental disorder must result in either an extreme limitation of one area of mental functioning or marked limitation in two. 20 C.F.R. § Pt. 404, Subpt. P, App. 1. A marked limitation is a seriously limited ability to function "independently, appropriately, effectively, and on a sustained basis." *Id.* An extreme limitation is the inability to function "independently, appropriately, effectively, and on a sustained basis." *Id.*

[8] The ALJ determined that plaintiff had a mild limitation in interacting with others because there was no evidence of social anxiety or isolative tendencies. [11-1] at 24. As for adapting or managing, the evidence did not establish that plaintiff was unable to manage her personal affairs because she testified to bathing and dressing herself, managing her personal hygiene, preparing light meals, and handling her finances independently. *Id.*

5

depression and anxiety had a moderate limitation on the plaintiff's ability to understand, remember, and adequately apply information in a work setting. *Id*. In making this finding, the ALJ acknowledged that plaintiff was able to answer some questions and perform recall assessments during her consultative examination but showed difficulty with other questions and in solving simple multiplication problems. *Id*. The ALJ determined a moderate limitation on plaintiff's ability to concentrate, persist or maintain pace. *Id*. She noted plaintiff's difficulty concentrating, remembering programs she had watched, making exact change, and performing simple multiplication. [9] *Id*.

Because plaintiff's impairments were severe under step two but were not conclusively disabling disorders under step three, the ALJ proceeded to determine plaintiff's "residual functional capacity" in order to complete steps four and five. [11-1] at 25–28. Residual functional capacity is an assessment of a person's ability to do sustained work-related physical and mental activities for 8 hours a day, 5 days a week. SSR 96-8p, 61 Fed. Reg. 34474, 34475 (July 2, 1996). The RFC is based on all relevant evidence in the record: a claimant's complete medical history; statements from medical sources about what the claimant is still capable of; and statements about the claimant's limitations from the claimant herself, her family, neighbors, friends, or other people. 20 C.F.R. § 404.1545(a)(3).

---

[9] The ALJ also evaluated plaintiff's mental impairments under paragraph C criteria and found that the evidence did not establish that she had a minimal capacity to adapt to changes in her environment. [11-1] at 25.

The ALJ considered plaintiff's subjective symptoms—pain in her back and legs that required her to take breaks to sit down, difficulty walking for more than ten minutes, dizziness from her pain medications, anxiety "flare-ups" due to pain, poor quality of sleep, and difficulty concentrating. [11-1] at 26. While plaintiff's impairments could reasonably be expected to cause the symptoms, the ALJ found plaintiff's statements about the intensity, persistence, and limiting effects of the symptoms to be inconsistent with plaintiff's medical record. *Id.* She found plaintiff's statements to be inconsistent because the severity of her impairments was not supported by the whole medical record and because plaintiff did not show she was unable to perform daily activities because of those impairments. *Id.*

The ALJ first reviewed plaintiff's medical assessments related to her musculoskeletal impairment. A chest x-ray in 2019 showed mild loss of height of the T12 through L1 levels. [11-1] at 26, 334–35. An MRI in 2018 showed disc protrusion at the T12 through L1 levels, disc bulging at the L2 through L4 levels, and mild anterior wedging at the L1 through L3 levels. *Id.* at 26, 421–22. An evaluation showed plaintiff's motion in her lumbar spine to be lightly limited with lumbar flexion and extension. *Id.* at 26, 424. The ALJ noted that it was unclear from the record whether plaintiff underwent the physician's advised treatment for epidural steroidal injections. *Id.* at 26. Another assessment of plaintiff's back showed symmetry, no curvature, normal range of motion, and no tenderness. *Id.* at 27, 290. Other assessments also showed plaintiff exhibiting normal gait and station with normal muscle strength. *Id.* at 27, 296, 323, 386, 418. The ALJ noted that no surgical

7

intervention had been recommended by a treating physician. *Id.* at 27. She also noted that plaintiff could perform her daily activities including bathing, dressing, tending to her personal hygiene, and preparing light meals. *Id.*

The ALJ then reviewed plaintiff's mental impairments. Plaintiff had a "good attitude" during the state psychiatric consultative exam; difficulty making exact change or completing simple multiplication; prescriptions for her depression and anxiety; and the ability to perform daily activities like bathing, dressing, tending to personal hygiene, and preparing light meals. [11-1] at 27. The ALJ also noted plaintiff's testimony at the hearing that she had difficulty remembering shows she watched on television and that she has a hard time concentrating. *Id.*

The ALJ did not assign controlling weight to any medical opinions, including the state psychiatric consultation and the two state non-examining consultations at the initial and reconsideration levels. [11-1] at 27–28.[10]

The ALJ found that the plaintiff had the RFC to perform medium work with the following limitations: she can occasionally climb ladders, ropes, or scaffolds; she can frequently climb ramps and stairs, stoop, kneel, crouch and crawl; she can understand, remember, and carryout simple routine instructions and use judgment limited to simple work-related decisions. [11-1] at 25. The ALJ determined that plaintiff had no past relevant work under her RFC. *Id.* at 28.

---

[10] The ALJ discounted the opinion evidence of the state medical consultant at the reconsideration level who opined that there was insufficient evidence to establish either a physical or mental impairment. The ALJ found that "the record does indeed point to evidence of diagnosis and treatment, although conservative" for plaintiff's musculoskeletal disorder, anxiety, and depression. [11-1] at 28.

At step five, the ALJ asked the vocational expert questions to determine whether the plaintiff could perform work in the national economy given her RFC, age, education, and work experience. [11-1] at 29, 51–53. The ALJ posed a hypothetical individual of plaintiff's age, education and without past relevant work who is able to perform work at the medium exertional levels with the above limitations. *Id.* at 52. The vocational expert identified three occupations that somebody with plaintiff's restrictions could perform: counter supply worker, hand packager, and order picker. *Id.* at 29, 52. The ALJ then asked the vocational expert about the tolerances for being off-task, which the VE responded that no more than 10% of the workday could be off-task. *Id.* at 52. The ALJ then asked about the tolerances for absences, which the VE responded could be no more than one absence per month and no more than eight total in a year. *Id.* at 52–53.

The ALJ concluded that Gail A. was not disabled. [11-1] at 16–18. The Social Security Appeals Council denied review of the ALJ's decision. *Id.* at 4–9. Plaintiff now brings this suit seeking judicial review.

**III.   Analysis**

First, plaintiff challenges the ALJ's RFC assessment of medium work for failing to adequately account for plaintiff's musculoskeletal impairments. Plaintiff argues that the ALJ erred in weighing medical examinations showing "normal" findings with "abnormal" findings. [12] at 5–6. The ALJ considered medical evidence consistent with plaintiff's statements about its intensity, persistence, and limiting effects: a chest x-ray showing mild loss of height, an MRI showing degenerative

9

changes, assessments of lower back pain with sciatica and radiculopathy, and plaintiff's reported pain symptoms when standing or walking for sustained periods of time. [11-1] at 26. The ALJ also considered evidence consistent with normal findings: an assessment of her back that showed symmetry, no curvature, normal range of motion and no tenderness; reports that she exhibited normal gait and station with normal muscle strength; that no surgical intervention had been suggested by any medical provider; and that plaintiff could perform daily activities like bathing, dressing, and preparing light meals. *Id.* at 27. Plaintiff cites to *Wilder v. Chater*, 64 F.3d 335 (7th Cir. 1995), to stand for the proposition that medical examinations conducted for purposes unrelated to treating plaintiff's musculoskeletal issues (e.g., a pre-operative exam for her cataracts surgery or a visit to a primary care physician to treat stomach pain) are not relevant exams and should not have been relied upon by the ALJ. [12] at 6. *Wilder* involved an ALJ unreasonably relying on medical records for the treatment of claimant's "purely physical ailments" to contradict evidence by a psychiatrist who was the only one to provide direct testimony concerning the claimant's severe depression. *See Wilder*, 64 F.3d at 337. In this case, the medical examinations that the ALJ considered as part of the record included multiple doctor's visits for physical ailments during which the treating physician conducted physical evaluations for plaintiff's other health problems. *See, e.g.*, [11-1] at 309–23 (visit for stomach pain to primary care physician included full physical assessments and assessment of plaintiff's chronic left-sided low back pain and sciatica resulted in

10

referral to anesthesia pain clinic). The ALJ did not err by considering medical evidence from these examinations.

The ALJ also did not impermissibly "play doctor" by substituting her own judgment for a medical opinion. [12] at 6. The x-ray and MRI results that the ALJ considered did not constitute "raw objective evidence." *Id.* The results were reviewed by doctors and summarized in findings and impressions. *See* [11-1] at 334–37 (chest x-ray in 2019), 421–22 (MRI in 2018). Plaintiff argues that "no medical source had the benefit of reviewing the above imaging and exam findings, in conjunction with Plaintiff's symptoms, to determine the impact on her physical functioning." [12] at 6–7. But the state-agency medical consultant at the reconsideration level (but not at the initial determination level) who reviewed plaintiff's records also reviewed the 2018 MRI results along with her medical record and found insufficient evidence to make a finding of physical or mental impairment. *See* [11-1] 67–71. The medical consultant noted that plaintiff did not attend a scheduled consultative examination and had "not cooperated with the initial, written request or the follow up request." *Id.* at 69. At the hearing, the ALJ asked the plaintiff about why she did not attend the scheduled examination. *Id.* at 53. Plaintiff testified that she was unable to afford a cab to the appointment and did not have anybody available to give her a ride. *Id.* at 53–54. The ALJ did not err in failing to consider a medical assessment that did not exist. *See* 20 CFR § 404.1518 (stating consequences for a claimant's failure to appear for a consultative exam); *Davenport v. Berryhill*, 721 Fed. App'x 524, 527 (7th Cir.

11

2018) (finding that a claimant's refusal to submit to a medical examination was sufficient basis to deny her disability benefits).

As for plaintiff's obesity, the ALJ did not account for how it may limit plaintiff's RFC. [12] at 8. An ALJ is required to consider all limitations on a claimant's ability to work in making an RFC assessment "including those that do not individually rise to the level of a severe impairment." *Denton v. Astrue*, 596 F.3d 419, 423 (7th Cir. 2010). The ALJ evaluated plaintiff's obesity and found it to be non-severe at step two because there was no evidence of functional limitations caused by obesity alone or in combination with another impairment. [11-1] at 22. She supported this finding by pointing to plaintiff's medical record that showed "benign" cardiovascular and respiratory assessments while also noting some contrary evidence of coughing and dyspnea on exertion during one assessment. *Id.* The ALJ's finding that plaintiff's obesity was a non-severe impairment was supported by substantial evidence. But an ALJ is required to consider "the exacerbating effects of a claimant's obesity on her underlying conditions (even if the obesity is not itself a severe impairment) when arriving at a claimant's RFC." *Hernandez v. Astrue*, 277 Fed. App'x. 617, 623–24 (7th Cir. 2008).

Plaintiff's medical records show evidence of other impairments whose effects are potentially compounded by obesity. The agency regulation notes that "[o]besity increases stress on weight-bearing joints and may contribute to limitation of the range of motion of the skeletal spine and extremities." SSR 19-2p, 84 Fed. Reg. 22924, 22925 (May 20, 2019); *see also Stephens v. Berryhill*, 888 F.3d 323, 328 (7th Cir. 2018)

12

("We recognize that the combined effect(s) of obesity with other impairments may be worse than those same impairments without the addition of obesity.").

But the failure to consider the effects of obesity was harmless here. *See Skarbek v. Barnhart*, 390 F.3d 500, 504 (7th Cir. 2004) (harmless error where claimant did not specify how her obesity impaired her ability to work and where the ALJ adopted limitations suggested by reviewing doctors who were aware of claimant's obesity); *Prochaska v. Barnhart*, 454 F.3d 731, 737 (7th Cir. 2006) (same). The Commissioner argues that plaintiff did not supply evidence of how her obesity limited her ability to work. [14] at 8. Indeed, there is no diagnosis for obesity in plaintiff's record. *See* [11-1] at 19, 237–41. Here, the ALJ considered evidence of plaintiff's cardiovascular and respiratory assessments and no physician identified plaintiff's obesity as an aggravating factor to her musculoskeletal impairments. *Id.* at 22; *see Prochaska,* 454 F.3d at 737 (noting that the medical reports relied upon by the ALJ identified claimant's height and weight but did not suggest that obesity exacerbated her physical impairments). She also considered plaintiff's statements about difficulty walking and standing. [11-1] at 22, 26. Because plaintiff did not connect her obesity with her impaired ability to work and because the RFC assessment accounted for plaintiff's difficulties walking and standing, the error was harmless.

Plaintiff also raises several objections to the ALJ's credibility determinations, *see* [12] at 13–15; [17] at 10–13, but none of them warrant remand. An ALJ's credibility determinations are reversed only when "patently wrong." *Hohman,* 72

13

F.4th at 251. But a determination "must contain specific reasons for the credibility finding." *Craft v. Astrue*, 539 F.3d 668, 678 (7th Cir. 2008). An ALJ "may not discredit a claimant's testimony about her pain and limitations solely because there is no objective medical evidence supporting it." *Villano v. Astrue*, 556 F.3d 558, 562 (7th Cir. 2009); 20 C.F.R. § 404.1529(c)(2). An ALJ may consider a claimant's daily life activities when considering her alleged symptoms. *See Craft*, 539 F.3d at 680; 20 C.F.R. § 404.1529.

The ALJ considered plaintiff's subjective symptoms but found them to be inconsistent with evidence in her medical record as a whole. [11-1] at 26. Weighing against plaintiff's subjective symptoms, the ALJ considered the following: no recommendation for surgical intervention by a treating source for her lumbar impairment; no ongoing treatment with a psychiatric specialist; and plaintiff's testimony at the hearing and in her psychiatric consultative exam that she could perform daily activities like bathing, dressing, tending to personal hygiene, and preparing light meals. *Id.* at 27, 298. The ALJ did not find that there was no objective medical evidence to substantiate plaintiff's subjective findings. Rather, she found that other evidence in the record outweighed those statements. Accordingly, the ALJ did not err on this determination.

Nor was the ALJ's assessment of plaintiff's daily activities incomplete. Plaintiff argues that the ALJ did not consider qualifications on her statements about her daily activities like her difficulty standing, lifting, and bending, depression, low motivation, hopelessness, and weight gain. [12] at 14; [17] at 10–11. Plaintiff cites to *Craft*, which

14

found the ALJ committed error in discounting the claimant's symptoms by ignoring qualifications of how the claimant carried out those activities, like how "his daily walk was merely to the mailbox at the end of the driveway." *See Craft*, 539 F.3d at 680 (internal quotation omitted). But the qualifications that plaintiff identifies in this case are other subjective symptoms that the ALJ did account for her in her assessment. *See* [11-1] at 26. So, the ALJ did not err in her assessment of plaintiff's daily activities.

Plaintiff takes issue with the ALJ's characterization of plaintiff's "conservative" treatment for her musculoskeletal issues and her anxiety and depression. [11-1] at 27–28; [12] at 15; [17] at 11–12. Plaintiff argues that the ALJ failed to consider that "narcotics[] objectively, is not conservative treatment." [12] at 15. The Commissioner argues that the ALJ did not discount plaintiff's symptoms because she failed to seek treatment but because the medical record suggested that "no more than conservative treatment was necessary." [14] at 12. I agree with the Commissioner. The ALJ noted, for example, that there was no surgical intervention suggested by a treating source for plaintiff's lumbar impairment. [11-1] at 27. The ALJ's consideration of this evidence was not based on plaintiff's failure to have surgery but was related to the assessment of whether her impairment was so severe as to require surgery in the first place. Plaintiff also argues that the ALJ failed to consider the barriers that she faced in accessing treatment, as evidenced by her testimony that she could not attend the consultative exam because she could not afford cab fare. [12] at 15–16. An ALJ "must not draw any inferences about a

15

claimant's condition from [her failure to follow a treatment plan] unless the ALJ has explored the claimant's explanations as to the lack of medical care. An inability to afford treatment is one reason that can provide insight into the individual's credibility." *Craft*, 593 F.3d at 679 (internal quotations omitted). The ALJ could have followed up to explore whether the same financial conditions that led to her inability to appear for the consultative exam also led to her lack of treatment, but the ALJ's credibility determination is supported by substantial evidence that plaintiff's impairments were not so severe as to require more aggressive treatment.

Plaintiff argues that the ALJ erred because the RFC assessment only accounted for her limitations in performing complex tasks but not her limitations in sustaining concentration and pace over a work day. [12] at 10–13. An ALJ's hypotheticals to the vocational expert and RFC assessment must incorporate all of a claimant's limitations supported by the medical record. *Yurt v. Colvin*, 758 F.3d 850, 857 (7th Cir. 2014). An ALJ must explicitly address limitations in concentration, persistence, and pace in hypotheticals posed to the vocational expert unless one of three exceptions applies: (1) the vocational expert was independently familiar with the claimant's medical file; (2) the hypothetical adequately apprised the vocational expert of the claimant's underlying mental conditions; or (3) the hypothetical otherwise accounted for the limitations using different terminology. *Lanigan v. Berryhill*, 865 F.3d 558, 565 (7th Cir. 2017). Here, the ALJ determined that plaintiff had a moderate limitation in her ability to concentrate, persist, or maintain pace; she based this determination in part on plaintiff's testimony about difficulty

16

remembering TV programs and having a hard time concentrating. [11-1] at 24. But the ALJ did not then include this limitation in the RFC assessment. And none of the above exceptions apply to plaintiff's case. The vocational expert only reviewed materials related to plaintiff's work history and was not familiar with her medical record. *Id.* at 51–52. The hypotheticals posed by the ALJ did not factor in plaintiff's underlying mental conditions of anxiety or depression. *Id.* at 51–53. And the hypotheticals did not use different but equivalent medical terminology. *Id.*; *see Lanigan*, 865 F.3d at 566 (finding that an ALJ's hypothetical about "off-task" behavior did not sufficiently inform the vocational expert of claimant's moderate limitations in concentration, persistence, or pace).

The ALJ accounted for complexity of tasks with the limitation in the RFC to "simple routine instructions" and using judgment related to "simple work-related decisions," [11-1] at 25, but that is insufficient. An RFC assessment must account for a plaintiff's full range of limitations related to concentration, persistence, and pace. *See Martin v. Saul*, 950 F.3d 369, 373 (7th Cir. 2020) ("Over many cases we observed a recurring error: ALJs would limit a claimant to 'unskilled work' and conclude that by doing so they had incorporated a claimant's full range of CPP limitations—challenges concentrating, staying on task, and maintaining a given pace in the workplace. Time and again we have disagreed."). A claimant's "ability to stick with a given task over a sustained period is not the same as the ability to learn how to do tasks of a given complexity." *O'Connor-Spinner v. Astrue*, 627 F.3d 614, 620 (7th Cir. 2010). Limitations to "simple, routine" tasks relate to how quickly work can be

17

learned and the level of complexity, while limitations on concentration, persistence, and pace relate to the ability to complete work over a sustained period of time. *See id.* While there are no requirements on ALJs to "use certain words, or to refrain from using others, to describe the pace at which a claimant is able to work," some tailoring based on the plaintiff's mental impairments is necessary. *See Martin*, 950 F.3d at 374 (affirming ALJ's RFC determination limiting claimant to "simple tasks with low stress, occasional changes, *a flexible pace,* and superficial interactions with others" as properly tailored) (emphasis added).

Because the ALJ did not build an accurate and logical bridge between evidence of plaintiff's mental impairments and her ability to perform work under the RFC, the ALJ erred. This error was not harmless because plaintiff's limitations in concentrating, persisting, or maintaining pace may have eliminated jobs suggested by the vocational expert. *See Crump v. Saul*, 932 F.3d 567, 571 (7th Cir. 2019) (where the evidence supports restrictions in concentration, persistence, or pace, failing to account for such limitations is not harmless error).

### IV. Conclusion

The Commissioner's motion to affirm, [13], is denied and plaintiff's motion to reverse, [12], is granted in part. The Commissioner's decision is reversed, and the

case is remanded for further proceedings consistent with this opinion. Enter judgment and terminate case.

ENTER:

                                                            Manish S. Shah
                                                            United States District Judge

Date: December 6, 2023